UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

LAZARO DEJESUS, :
:
           Plaintiff, :
   v. : No. 5:16-cv-04745
:
PAUL WEHRMAN, CRAIG BARRETT, :
CHRIS CRAWFORD, HOFFMAN, State Parole :
Agents, individually, DETECTIVE TODD :
GRAGER,[1] individually and in his official capacity, :
LANCASTER COUNTY DRUG TASK FORCE, :
doing business as COUNTY OF LANCASTER, :
AND, COUNTY OF LANCASTER :
:
           Defendants. :
_____

**O P I N I O N**

**Defendant Grager's Motion to Dismiss for Failure to State a Claim, ECF No. 20 – Granted**

**Defendants Wehrman, Barrett, Crawford, and Hoffman's Motion for Judgment on the Pleadings, ECF No. 40 – Granted**

**Joseph F. Leeson, Jr.**                                                             **September 27, 2017**
**United States District Judge**

**I.    Introduction**

       Lazaro DeJesus filed this civil action in September 2016. He alleges that his constitutional rights were violated and that he was maliciously prosecuted by the above-captioned defendants, who are Pennsylvania State Parole agents (Paul Wehrman, Craig Barrett, Chris Crawford, and Hoffman); a detective with the Lancaster County Drug Task Force (Todd Grager); the Lancaster County Drug Task Force ("Task Force"); and the County of Lancaster.[2]

---

[1]    In Plaintiffs' Response in Opposition to Defendant Grager's Motion to Dismiss, Plaintiffs also include a cross-motion to correct the spelling of Defendant's name. *See* Pl.'s Resp. Grager Mot. Dismiss, ECF No. 31. In the cross-motion, Plaintiffs assert that in the Amended Complaint they mistakenly spelled Defendant Todd Grager's name as "Granger." *Id.*

[2]    Because the County and the Task Force have not filed a motion to dismiss, the allegations against them are not discussed herein.

The Parole Agents have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), while the detective has moved to dismiss the claim against him pursuant to Rule 12(b)(6). Because DeJesus has failed to state a claim upon which relief can be granted, his claims against the Parole Agents and Detective Grager are dismissed with prejudice.

## II.     Background

DeJesus was incarcerated in the Pennsylvania state prison system for third degree murder, robbery, and conspiracy. Parole Answer ¶ 10, ECF No. 26.[3] He received parole in October 2011, a condition of which was that he consented to the search of his person, property, and residence without a warrant by agents of the Pennsylvania Board of Probation and Parole. First Am. Compl. ¶ 10, ECF No.18 (hereinafter, "Compl."). At the time of the occurrences underlying this action, DeJesus's approved address was on West Orange Street in Lancaster, Pennsylvania. *Id.* ¶ 11.

On January 14, 2013, State Parole Agent Crawford received a tip from an anonymous caller who alleged that DeJesus was living at an unauthorized address on Plum Street in Lancaster, Pennsylvania with his girlfriend. Compl. ¶ 12. The caller further averred that DeJesus was illegally in possession of a firearm and was selling controlled substances from this apartment. *Id.* Acting upon this information, Agent Crawford assembled a surveillance team for the Plum Street residence. Agent Crawford also notified his supervisor, State Parole Agent Wehrman, of the phone call. Agent Wehrman knew that Plum Street was not DeJesus's official address. However, he neither contacted DeJesus about the matter, nor did he contact any individuals who may have also resided at that address. *Id.*

Two weeks later, State Parole Agent Barrett spoke with Detective Grager and learned that heroin was being sold at the Plum Street residence. Opinion 3, Ex. A to Compl., ECF No. 18-1.[4]

---

[3]    This Court does not consider the allegations in the Parole Answer in deciding Detective Grager's Motion to Dismiss.

[4]    In section 1983 cases, a state court's findings of fact may be entitled to preclusive effect in the federal courts. *See Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). As the Third Circuit Court of Appeals explained:
> The doctrine of collateral estoppel generally precludes a party from re-litigating issues or claims that have already been adjudicated. *See Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). It is well established that principles of collateral estoppel are fully applicable to civil rights actions brought under § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). Furthermore, this Court has held that defendants in a § 1983 suit can raise the issue of collateral estoppel when the plaintiff attempts to re-litigate in federal court issues decided against him in state criminal proceedings. *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986); *see also Matthews v. Macanas*, 990 F.2d 467, 468 (9th Cir. 1993), *abrogated on other grounds as stated in Pascual v. Matsumura*, 165 F. Supp. 2d 1149, 1151 (D. Haw. 2001) (noting that collateral estoppel may be asserted to preclude a defense to a

Agent Wehrman thereafter secured supervisory approval to search DeJesus at the Plum Street residence, along with his property and anything else believed to "lead them to the next step." Compl. ¶ 16. Agents Barrett, Hoffman, Crawford, and Wehrman drove to the Plum Street residence and waited for DeJesus to arrive. *Id.* ¶ 17. After DeJesus arrived and walked toward the residence, the Agents approached DeJesus and handcuffed him. *Id.* ¶ 19. DeJesus, who possessed a key to the Plum Street residence, informed the Agents that the residence belonged to his girlfriend. *Id.* ¶¶ 18-20. The Agents conducted a search of DeJesus's person and vehicle, and did not find drugs, weapons, paraphernalia, or other suspicious items indicating that he was in violation of his parole. *Id.* ¶ 22. The Agents then informed DeJesus that they were going to search the Plum Street residence because he stayed there. Compl. ¶¶ 24, 26; Opinion 6. The Agents asked DeJesus whether he had anything in the residence, to which he replied that he had "some drugs in a box in the side of the dresser." Opinion 6. Using a key found on DeJesus's person, the Agents unlocked the front door. *Id.* Once inside they saw a white powdery substance that DeJesus said was used as a cutting agent. *Id.* They also found a safe on the side of the bedroom dresser, for which DeJesus had the key on his keychain. *Id.* From inside the safe, the Agents recovered suspected heroin and packaging materials. *Id.*; Compl. ¶ 27. The Agents then called Detective Grager to report their findings.[5] *Id.*

Upon arrival, Detective Grager requested permission to enter the Plum Street residence, but DeJesus maintained that the residence was not his and that he could not give permission. Compl. ¶ 28. Detective Grager then asked DeJesus's girlfriend Miranda, who had since returned to the residence, for permission to enter but she refused consent without a warrant. *Id.* Detective Grager nevertheless entered the residence. *Id.* He thereafter requested that DeJesus and Miranda sign a consent form to allow him to search the residence. *Id.* ¶ 29. DeJesus continued to maintain that he could not give permission, while Miranda again refused. *Id.* Detective Grager then advised them, "I can either go get a warrant and then destroy this apartment or you can give me permission now and I will only perform a normal search." *Id.* Concerned about potential property damage, Miranda relented and consented to the search. *Id.* Detective Grager took possession of

---

Bivens claim); *Scherer v. Balkema*, 840 F.2d 437, 443 (7th Cir. 1988) (same). Under Pennsylvania law, the doctrine of collateral estoppel requires that: (a) the issue in question be identical to an issue actually litigated in the prior litigation; (b) the prior litigation resulted in a final judgment on the merits; and (c) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication. *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974).

*Ingram v. Lupas*, 353 F. App'x 674, 676 (3d Cir. 2009).

[5] Policy for the Pennsylvania Department of Probation and Parole states that local police are given the authority to charge a parolee with respect to any illegal substances found in the parolee's possession. Opinion 7.

the drugs and arrested DeJesus, charging him with two counts of Manufacture, Deliver, or Possession With Intent to Deliver and one count of Use/Possession of Drug Paraphernalia. *Id.*

During the course of DeJesus's criminal prosecution, he moved to suppress the drugs, arguing that the Agents and Detective Grager conducted an unlawful search of the Plum Street residence. In October 2014, the Honorable Judge Wright of the Lancaster County Court of Common Pleas issued an opinion stating that although it was clear that DeJesus was in violation of his parole by selling drugs, the evidence was obtained in violation of his federal and state constitutional rights. Compl. ¶ 31; Parole Answer ¶ 31. The state court concluded that there was no reasonable suspicion of a parole violation to justify a parole search of a non-parolee's residence, and suppressed the drug evidence from the criminal proceedings.[6] Opinion 12-23, 31.

On September 1, 2016, DeJesus filed this action asserting two counts: (1) Malicious Prosecution[7] against all Defendants, and (2) *Monell*[8] against the Task Force and the County. ECF No. 1. After Detective Grager first moved to dismiss the Complaint, DeJesus filed an Amended Complaint. Detective Grager has again filed a Motion to Dismiss DeJesus's claim, arguing that he had probable cause to arrest DeJesus and is protected by qualified immunity. Grager Mot. Dismiss, ECF No. 20. The Parole Agents have moved for judgment on pleadings pursuant to Federal Rule of Civil Procedure 12(c), asserting that they did not initiate the prosecution and there was probable cause to charge DeJesus. Mot. J. Pldgs., ECF No. 32. For the reasons set forth below, this Court finds that there was probable cause to arrest DeJesus and grants both motions.

---

[6] Judge Wright also found that the parole agents were not acting as "stalking horses" for Detective Grager when they searched the residence, as only one of them had any contact with Detective Grager before the search and he did not direct the agents to conduct a search or take any steps with respect to DeJesus. Opinion 8-10 (citing *United States v. Williams*, 417 F.3d 373, 377 (3d Cir. 2005) (explaining that a search by a probation officer may be invalid if he acts as a "stalking horse" on the prior request of law enforcement officers, if the probation officer used the probation search to help police evade the Fourth Amendment's warrant and probable cause requirements and did not enlist the police to assist his own legitimate objectives)).

[7] To the extent that the Amended Complaint could be liberally construed as also asserting a Fourth Amendment violation based on the allegedly unlawful search of the Plum Street residence, DeJesus lacks standing to bring this claim. *See United States v. Stewart*, 131 F. App'x 350, 352 (3d Cir. 2005) (holding that "a non-resident arrestee has no standing to assert the rights of a resident third-party"); *Eiland v. Jackson*, 34 F. App'x 40, 42-43 (3d Cir. 2002) (concluding that the plaintiff did not have standing to bring a § 1983 claim under the Fourth Amendment because he did not have an ownership interest in the house searched). Further, DeJesus does not allege that the Agents' search of his person was unlawful, but in fact admits that he "consented to the search of *his* person, property, and residence . . . ." Compl. ¶ 10 (emphasis in original).

[8] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

### III. Standards of Review
#### A. Motion to Dismiss Standard

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). This Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). A court may also consider documents or exhibits attached to the pleadings. *See Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 38 (3d Cir. 2015).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Nor may a court accept as true a plaintiff's conclusions of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to survive the motion].").

Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Allegations rich in factual detail are not required "but a claim must be "nudged . . . across the line from conceivable to plausible." *Id.* at 678-80 (quoting *Twombly*, 550 U.S. at 570). That is, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557)).

#### B. Judgment on the Pleadings Standard

"A motion for judgment on the pleadings will not be granted unless the movant clearly establishes that no material issues of fact remain, and that the movant is entitled to a judgment as a matter of law." *Foreman v. Lowe*, No. 3:CV-06-0580, 2007 U.S. Dist. LEXIS 96962, at *3 (M.D. Pa. Mar. 30, 2007). Where, as here, the Rule 12(c) motion asserts that a plaintiff has

failed to state a claim upon which relief can be granted, the court should apply the same standard as a Rule 12(b)(6) motion to dismiss. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)). "The only notable difference between these two standards is that the court in a motion for judgment on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Foreman*, 2007 U.S. Dist. LEXIS 96962, at *4.

### IV. The malicious prosecution claim is dismissed with prejudice.

DeJesus alleges that the Parole Agents and Detective Grager maliciously prosecuted him in violation of his Fourth and Fourteenth Amendment rights and Pennsylvania common law. A federal malicious prosecution claim is "intended to redress [the] deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (citations omitted). "The alleged seizure must emanate from the prosecution, and must 'occur chronologically after the pressing of charges.'" *Roberts v. Caesar's Entm't, Inc.*, 72 F. Supp. 3d 575, 581 (quoting *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 659 (W.D. Pa. 2010)). Events prior to the prosecution—such as arrest and formal lodging of charges—is not a basis for the claim. *Id*. Malicious prosecution claims may be premised on both the Fourth and Fourteenth Amendments, but not under the Fourteenth Amendment's substantive due process protections. *See Torres v. McLaughlin*, 163 F.3d 169, 172-74 (3d Cir. 1998). *See also Albright v. Oliver*, 510 U.S. 266, 272 (1994) (holding that malicious prosecution is "markedly different" from normal substantive due process issues). *Cf. Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these [excessive force] claims."). Instead, malicious prosecution must be based on, as here, procedural due process grounds.

To succeed on a § 1983 malicious prosecution claim, a plaintiff must demonstrate that the defendants initiated the criminal proceedings; the proceedings terminated in the plaintiff's favor; the proceedings were initiated without probable cause; the defendants acted maliciously or otherwise without the desire to bring the plaintiff to justice; and that the plaintiff suffered "a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016). Similarly, a malicious prosecution claim under Pennsylvania law is sustained only if the plaintiff can demonstrate that the defendant instituted proceedings without probable cause and with malice, and the proceedings terminated in the plaintiff's favor.[9] *Kelley v. Gen. Teamsters, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Plaintiffs alleging malicious prosecution bear the burden of proving want of probable cause. *Miller v. Pa. R. Co.*, 89 A.2d 809, 811 (Pa. 1952).

---

9  That the proceedings terminated in DeJesus's favor is not contested by the parties.

### A. Detective Grager, not the Parole Agents, initiated the criminal proceedings.

The Parole Agents correctly point out that they did not initiate the criminal proceedings against DeJesus; rather, upon discovering the illegal drugs and drug paraphernalia, they reported their findings to Detective Grager. However, this conclusion is not necessarily dispositive. *See Gilbert v. Feld*, 788 F. Supp. 854, 861 (E.D. Pa. 1992). Liability is still possible if the defendants "influenced" a third party to initiate proceedings. *Id*. (citing *Hess v. Cnty. of Lancaster*, 514 A.2d 681, 683-84 (Pa. Commw. Ct. 1986)). A comparison of two "influencing" cases is instructive.

In *Bristow v. Clevinger*, cited by DeJesus, a private citizen repeatedly made attempts to convince a police officer and an assistant district attorney ("ADA") to bring theft charges against his ex-wife. 80 F. Supp. 2d 421, 424-25 (M.D. Pa. 2000). Although the police initially believed the matter was not criminal in nature, the ex-husband influenced both the officer and the ADA to prosecute his ex-wife by obtaining advice from a separate assistant district attorney. The court found that the ex-husband's attempts to influence the independent judgment of law enforcement were sufficiently persuasive to deny summary judgment as to whether the ex-husband had initiated criminal proceedings against his ex-wife. *Id*. at 433.

Conversely, in *Barnett v. York Cnty.*, four parole agents conducted a spot check on Barnett as part of a criminal investigation. No. 11-0906, 2011 WL 2790467, at *2 (M.D. Pa. June 24, 2011). Drugs were found on Barnett's person and approved residence, and the parole agents handed the incriminating evidence to a detective, the only individual who prepared papers for Barnett's arrest. *Id*. The charges against him were *nolle prosequi* because the drug evidence had disappeared. *Id*. Barnett thereafter sued the parole agents and the detective for malicious prosecution. *Id*. The court held that Barnett failed to show that the parole agents had initiated a criminal proceeding against him because they had no direct involvement in his search and seizure. *Id*. at *19. Moreover, Barnett's pleadings and exhibits showed that only the detective initiated his prosecution. *Id*. Consequently, the court dismissed the malicious prosecution charges against the parole agents. *Id*.

*Barnett* is more analogous to the facts of this case and supports this Court's conclusion that the Parole Agents did not initiate criminal proceedings against DeJesus. Here, as in *Barnett*, four parole agents searched DeJesus's person and what they believed to be his residence. They conducted the search without any direction from Detective Grager. Opinion 8-10. Although the parole search was deemed unconstitutional, the Agents found drugs and paraphernalia, and handed them off to Detective Grager consistent with Policy for the Pennsylvania Department of Probation and Parole that states that local police are given the authority to charge a parolee with respect to any illegal substances found in the parolee's possession. Opinion 7. Also like the detective in *Barnett*, Detective Grager was the only individual who arrested and filed charges against DeJesus. Unlike in *Bristow*, DeJesus has not alleged that the Agents lobbied Detective Grager to file meritless criminal charges against him. Rather, the Agents were acting in accordance with their own professional duties. Opinion 11. The undisputed facts therefore show

that Detective Grager was solely responsible for arresting and instituting the criminal proceedings. Accordingly, judgment is entered in the Parole Agents' favor as to the malicious prosecution claim, which is the only claim against them.

### B.    Detective Grager had probable cause to arrest and prosecute DeJesus.[10]

Determining the existence of probable cause is an endeavor for the court, not a jury. *See Gilbert v. Feld*, 842 F. Supp. 803, 815 (E.D. Pa. 1993). Probable cause requires that, under the totality of the circumstances, there is a "fair probability" that the person committed the offense. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts rely on "the factual and practical considerations of everyday life on which reasonable and prudent men . . . act." *Id.* at 230-31; *Carney v. Pennsauken Twp. Police Dep't*, 598 F. App'x 80, 82 (3d Cir. 2015). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). Further, probable cause has both subjective and objective components. The subjective component requires that the defendant truly believed that the plaintiff committed the crime for which he was prosecuted, while the objective component demands that the defendant's belief was based upon "'a *reasonable ground* of suspicion of guilt.'" *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 434 (M.D. Pa. Jan. 19, 2000) (quoting *Neczypor v. Jacobs*, 169 A.2d 528, 531 (Pa. 1961) (emphasis added in *Bristow*)). This objective component is based on "'the facts available to the [defendants] at the time of the arrest.'" *Basile*, 752 F. Supp. 2d at 651 (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

While the parties dispute the existence of probable cause, no material issues of fact are in dispute. DeJesus, relying upon Judge Wright's ruling on his suppression motion, argues that there could not have been probable cause that he committed a crime because the evidence was illegally obtained. *See* Pl.'s Resp. Grager Mot. Dismiss 5. The Agents respond that while the evidence may have been illegally obtained and therefore suppressed for DeJesus's criminal trial, this does not militate against introducing the evidence to defend against a malicious prosecution claim. Reply Br. Supp. J. on the Pleadings 3, ECF No. 39 (citing *Zamichieli v. Andrews*, No. 09-1688, 2016 U.S. Dist. LEXIS 51364, at *14-23 (E.D. Pa. Apr. 15, 2016) (holding that suppression of an illegal gun found during an unlawful search did not prevent its admission into evidence for the court's consideration in plaintiff's malicious prosecution claims under § 1983

---

[10]    To the extent that DeJesus may also have intended to assert a state tort or federal constitutional claim for false arrest or false imprisonment, it would also fail based on the presence of probable cause. *See Thomas v. Stanek*, No. 2:14-cv-415, 2015 U.S. Dist. LEXIS 21276, at *13 (W.D. Pa. Feb. 23, 2015) (holding that the essential element of a claim for malicious prosecution, false arrest, and false imprisonment is the lack of probable cause).

and Pennsylvania law). Defendants are correct. *See Christian v. Orr*, No. 08-2397, 2011 WL 710209, at *17 (E.D. Pa. Mar. 1, 2011) ("Whatever the legality of the searches that yielded the marijuana . . . possession of this drug is illegal in Pennsylvania and thus provides a basis for the police to effect a legitimate arrest."); *See Cox v. Pate*, No. 05-1712, 2007 U.S. Dist. LEXIS 14419, at *8 (W.D. Pa. Feb. 27, 2007) (holding that "the law is clear that the unlawful search did not vitiate the probable cause to arrest and detain the Plaintiffs").

In *Konopka v. Borough of Wyo.*, Konopka was prosecuted for illegally recording conversations of other employees using a tape recorder hidden in his desk drawer. 383 F. Supp. 2d 666, 670-71 (M.D. Pa. 2005). In his lawsuit against the Borough and others for malicious prosecution, Konopka attempted to exclude evidence of the tape recorder on that basis that there was no probable cause for the authorities to have searched his desk. *Id.* at 675. The court found that what was material to Konopka's claim was not whether the defendants had probable cause to search his desk, but rather if they had probable cause to initiate criminal proceedings against him. *Id.* The court continued:

> [A]ssuming arguendo that the search of Plaintiff's desk was unconstitutional and done in bad faith, . . . [Plaintiff] cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution. While the fruits of the allegedly illegal search may be inadmissible in criminal proceedings under the exclusionary rule, *the illegality of said search does not vitiate the existence of probable cause in relation to the Court's analysis in the matter presently before it.*

*Id.* (internal citations omitted) (emphasis added). Ultimately, the court allowed the tape recorder evidence and granted summary judgment to the defendants. *Id.* at 685. *See also Martin v. Anderson*, No. 07-CV-2965, 2008 U.S. Dist. LEXIS 87912, at *25-26 n.7 (E.D. Pa. Oct. 29, 2008) (granting summary judgment on the § 1983 malicious prosecution claim because even though the trial court suppressed all evidence derived from the search, the evidence could be used in the § 1983 proceedings to determine whether there was probable cause to arrest).

The facts of the instant case closely follow *Konopka*. As there, DeJesus was arrested and prosecuted for illegal activity. The evidence that the Agents obtained was done so illegally and, through a favorable suppression motion ruling, DeJesus had incriminating drug and paraphernalia evidence excluded from his criminal proceeding. However, what is material to the instant civil claims is whether the Parole Agents and Detective Grager had probable cause to initiate criminal proceedings in the first place. They did.

During their search of the Plum Street residence, the Agents discovered a Rubbermaid-type dresser filing drawer on top of the bedroom dresser containing a white powdery substance, a large amount of cash, and a prescription with DeJesus's name on it. *Id.* DeJesus informed the Agents that the powdery substance was a cutting agent. *Id.* The Agents also found a safe inside the bedroom dresser, for which DeJesus had the key. *Id.* 6-7. Inside the safe were heroin and

packaging materials. *Id.* at 7. Notably, before searching the Plum Street residence, DeJesus admitted to the Agents that "he had 'some drugs in a box in the side of the dresser.'" Opinion 6. Considering the totality of the evidence, this Court concludes that the Agents had probable cause to believe that DeJesus was in possession of drug paraphernalia and in possession of heroin with the intent to deliver. *See Rawlings v. Ky.*, 448 U.S. 98, 111 (1980) ("Once petitioner admitted ownership of the sizable quantity of drugs found in [another's] purse, the police clearly had probable cause to place petitioner under arrest."). When the Agents provided this information and evidence to Detective Grager, he had probable cause to charge DeJesus. *See Groman v. Township of Manalapan*, 47 F.3d 628, 635 n.10 (3d Cir. 1995) (holding that an arresting officer, who was not involved in the initial dispute, had probable cause to arrest based on the statement of a fellow officer that Groman assaulted her); *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("[A]n officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis."). The claim against Detective Grager is therefore dismissed.[11]

### C. DeJesus has failed to allege that the moving Defendants acted maliciously or otherwise without the desire to bring him to justice.

Even if this Court were to assume that all the moving Defendants initiated criminal proceedings against DeJesus and lacked probable cause in so doing, DeJesus's claim would still fail because no factual allegations show that Defendants acted maliciously or otherwise without the desire to bring him to justice for his criminal activity. Malice is defined as "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Mayfield v. Montgomery Cnty. Corr. Facility*, No. 03-cv-2234, 2009 U.S. Dist. LEXIS 12326, at *24 (E.D. Pa. Feb. 12, 2009) (internal quotations omitted). DeJesus makes multiple references to the fact that he did not have any "supervisory problems" with State Parole and complains that he was handcuffed on a public sidewalk, presumably to help establish that the Parole Agents and Detective Grager acted the way they did for nefarious reasons. Compl. ¶¶ 15, 19, 21. Taking DeJesus's depiction of himself as true, there are still insufficient factual allegations that the moving Defendants initiated proceedings with malice.

The Parole Agents, according to DeJesus, staked out the Plum Street residence based on an "inherently unreliable" tip about illegal drug dealing. Compl. ¶ 12. Despite his repeated assertions that he did not live on Plum Street, the Agents rushed at DeJesus "with guns drawn," searched his car, and searched the Plum Street residence without the actual owner's permission. Compl. ¶¶ 19, 23-26. Accepting these allegations as true, four agents rushing at DeJesus with

---

[11] Having determined that Detective Grager had probable cause to arrest DeJesus, this Court finds that he is also entitled to dismissal based on qualified immunity. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (holding that an officer is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest"); *Funderburg v. Gangl*, No. 93-6580, 1995 U.S. Dist. LEXIS 4875, at *9 (E.D. Pa. Apr. 12, 1995) ("A police officer who reasonably but mistakenly concludes that probable cause to arrest exists is entitled to immunity from suit.").

092717

their weapons drawn is concerning and potentially unnecessary. But, the Agents went to the residence only after having been informed that DeJesus was living and selling drugs at the Plum Street apartment. When they did not see DeJesus at the residence, they left and returned a few weeks later only after confirming that there was drug activity at the residence. Opinion 3-4. When DeJesus arrived at the residence on this second occasion, the Parole Agents detained him "per standard safety procedures." *Id.* at 5-6. When they advised him of their intent to search the residence, he admitted to the Agents that there were drugs inside and showed them the key to the apartment that was on his keychain. *Id.* Only after the Agents located drugs did they ask for Detective Grager to respond. This conduct does not support a finding that the Agents acted maliciously or otherwise without the desire to bring DeJesus to justice for his criminal activity.

Similarly, it has not been alleged that Detective Grager initiated prosecution maliciously or was motivated by something other than a desire to bring DeJesus to justice. Even accepting DeJesus's allegations as true that Detective Grager blatantly ignored Miranda's denial of permission to enter and subsequently coerced consent, the only reason Detective Grager went to the Plum Street residence was because he was summoned by the Parole Agents, who informed him that DeJesus was in possession of illegal drugs and paraphernalia. No factual allegations suggest that Detective Grager had any other reason for going to the Plum Street residence, or that he acted maliciously or with any intent other than to see DeJesus brought to justice for his criminal behavior.

The malicious prosecution claim is therefore dismissed against all the moving Defendants for this additional reason.

## V. Conclusion

DeJesus has failed to allege sufficient facts to make out a cognizable claim of malicious prosecution against Detective Grager, and the undisputed facts do not support his claim against the Parole Agents. Further, because DeJesus's arrest and criminal proceedings were initiated with probable cause, any amendment to the complaint would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend should be granted "unless it would be inequitable or futile"). Accordingly, the motions are granted, the malicious prosecution claim at Count 1 is dismissed with prejudice, and the moving Defendants are terminated from this action.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
